**In the United States District Court**
**For the Central District of Illinois**
**Urbana Division**

| | | |
|---|---|---|
| ANGELA BOWMAN, | ) | |
| Plaintiff | ) | |
| v. | ) | Case No. |
| | ) | |
| DECATUR PUBLIC SCHOOL DISTRICT 61, | ) | |
| and JULIE FANE, | ) | |
| | ) | |
| Defendants. | ) | **Jury Trial Demanded** |

**Complaint**

Now Comes the Plaintiff, ANGELA BOWMAN ("Bowman"), by and through her undersigned counsel, John A. Baker, and in support of her complaint against the Defendants, DECATUR PUBLIC SCHOOL DISTRICT 61 (the "District") and JULIE FANE ("Fane"), states as follows:

**I. Introduction**

1. Bowman was formerly employed by the District as a teacher at its French Academy. On March 15, 2016, she was notified that her employment with the District would terminate at the end of the school year. Bowman's claim is that the decision to terminate her was motivated by the fact that she took a medical leave of absence that was protected under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ( the "FMLA").

2. The United States Department of Labor has explained:

> The FMLA was predicated on two fundamental concerns—the needs of the American workforce, and the development of high-performance organizations. Increasingly, America's children and elderly are dependent upon family members who must spend long hours at work. When a family emergency

> arises, requiring workers to attend to seriously-ill children or parents, or to newly-born or adopted infants, or even to their own serious illness, workers need reassurance that they will not be asked to choose between continuing their employment, and meeting their personal and family obligations or tending to vital needs at home. 29 CFR § 825.101(b).

3. The FMLA is both prescriptive, in that it imposes certain affirmative obligations on employers, and it is restrictive, in that it precludes employers from retaliating against individuals who engage in activities that are protected under the FMLA.

4. In enacting the FMLA Congress ordered the Secretary of Labor to develop regulations "necessary to carry out" its terms. 29 U.S.C. § 2654.

5. It is unlawful for any employer to interfere with an employee's exercise of rights under the FMLA or the attempt to exercise those rights. 29 U.S.C. § 2615(a)(1); 29 CFR § 825.220(a).

6. Any violation of the FMLA or of the regulations promulgated by the Secretary "constitute interfering with, restraining, or denying the exercise of rights provided by the [FMLA]." 29 CFR § 825.220(b); *see also* 29 U.S.C. §2615(a)(1).

## II. Jurisdiction

7. This lawsuit is brought under the FMLA, raising a federal question. Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1331.

8. The actions giving rise to this claim occurred in Macon County, Illinois, making this Court the appropriate venue for this lawsuit.

## III. Parties

9. Bowman is an adult resident of the State of Illinois. She was previously employed by the District as a teacher. For the FMLA leave that is part of this litigation, Bowman was both

eligible for and entitled to FMLA leave.

10. The District is a school district in Decatur, Illinois.  According to its website:

```
 Decatur Public School District 61 was established in
 1865 and is the 27th largest public school district in
 the state of Illinois, serving more than 9,000
 students. The District consists of one
 pre-kindergarten/early learning center, eleven K-6
 elementary schools, four K-8 schools, two middle
 schools, two high schools, and an alternative
 education program. Five of our facilities are magnet
 schools, including a Pre-K to 8th-grade Montessori
 school and a technology magnet school. The District is
 also the administrative agent for the Macon-Piatt
 Special Education District.
```

At all times relevant to these proceedings the District employed more than 50 individuals and it was an employer as that term is defined by the FMLA.

11. At times relevant to this claim, Fane was employed by the District as the principal at the Mary French Academy.  In her capacity as principal, Fane was Bowman's supervisor and was the person responsible for making the recommendation to the Board of Education that terminated Bowman's employment.

### IV.  Factual Allegations

12. Bowman began working as a certified elementary teacher for the District on August 14, 2014.

13. Throughout her tenure with the District, Bowman worked at the District's Mary French Academy.

14. As a certified elementary teacher Bowman reported directly to the building principal.

15. Fane was employed as the principal at the Mary French Academy throughout

Bowman's employment with the District.

16. Throughout the 2014-2015 school year Bowman's performance was well regarded by Fane and the District. Fane, on multiple occasions, made the comment to her that Bowman was an exceptional teacher.

17. In approximately March of 2015 the District decided that Bowman's employment would be extended for the 2015-2016 school year.

18. On April 7, 2015, after her performance had been evaluated and after the decision had been made to extend her employment, Bowman advised Fane that she was pregnant. Fane understood that Bowman's pregnancy would necessitate a medical leave of absence in the fall of 2015.

19. Upon learning of Bowman's pregnancy, Fane's initial response was to say she was happy for her, however, she didn't want to lose Bowman as a teacher.

20. At the point in time that Bowman notified Fane that she was pregnant the French Academy was in the process of transitioning to a Science, Technology, Engineering and Math (STEM) program.

21. A critical part of the transitioning to a STEM program occurred during the fall of 2015.

22. On May 22, 2015, Bowman had her end of year conference with Fane. During that conversation Fane told Bowman that she was a great teacher and didn't want to lose her. That having been said, Fane told Bowman that it would be a good idea for her to attempt to transfer to a different school. Fane also told Bowman that if she were to stay at the French Academy she would start off her 2015-2016 school evaluations indicating that her performance was deficient. Fane told her that it was not a guarantee that she would be dismissed at the end of

the 2015-2016 school year, however, it would be very challenging for her to get an acceptable evaluation.

23. In short, during the May 22, 2015, meeting, Fane advised Bowman that she had pre-judged her performance for the school year that had not yet commenced.

24. Fane's comments to Bowman were inconsistent with the way she had been evaluated prior to the time that she announced her pregnancy.

25. Fane's concerns with Bowman were not the mere fact that she was pregnant. Rather, she was concerned that the pregnancy would necessitate a medical leave of absence for Bowman and that leave of absence would occur during a critical time in the progress of the school transitioning to a STEM program.

26. On approximately August 26, 2015, Bowman notified the District that she was requesting a medical leave of absence owing to her pregnancy. In support of her request, Bowman completed the District's FMLA leave forms (the forms provided by the U.S. Department of Labor) that included medical documentation from her physician. Bowman, who had worked more than 1250 hours in the previous year and who had been employed for more than 12 months, was both entitled to leave and eligible for leave that was protected under the FMLA.

27. Bowman's physician indicated that she would need a medical leave of absence that would commence when Bowman's baby was delivered (the due date was October 4, 2015) and that her leave would continue for "6-8 weeks after delivery."

28. On August 28, 2015, Bowman received a designation notice from the District indicating that her request for FMLA leave was approved.

29. Bowman's baby was born on September 21, 2015.

30. Bowman's physician ultimately requested that she be off of work for medical

reasons and could return on November 30, 2015.

31. Bowman did return to work as her physician had instructed.

32. Bowman's leave of absence for the birth of her child was protected under the FMLA.

33. Shortly after Bowman returned to work Fane began evaluating her job performance.

34. Fane, as she had promised she would do, drastically marked down Bowman's job performance in the evaluations.

35. For a non-tenured teacher, job performance evaluations are critical because they are ultimately used to determine whether a teacher is going to be retained.

36. Outside of the protected FMLA leave of absence, there was no difference in the Bowman's performance of her job duties from the previous year, the year before she went on a FMLA leave.

37. Fane's marking down of Bowman's performance evaluations occurred only because she had taken a FMLA protected leave of absence. Had she not taken a leave of absence her scores would have been the same or better than they had been the year before. This action of marking down evaluation scores impacts Bowman's rights under the FMLA. In this respect, 29 CFR 825.220(c), provides that an employer can not use a protected leave of absence as grounds for marking down an employee's performance.

38. As a result of the poor performance evaluations outlined above, Fane, in late February or early March of 2016, made a recommendation to the Board of Education that Bowman's employment be terminated at the end of the 2015-2016 school year.

39. On March 15, 2016, the Board of Education passed a resolution effectively

terminating Bowman's employment. Specifically, the Board concluded that based upon the recommendation of administrative staff, i.e. Fane, and based upon the evaluations of Bowman's performance, she would not be renewed for the 2016-2017 school year.

40. Fane provided Bowman with a copy of the Board of Education's determination on March 18, 2016.

41. Bowman's employment with the District ended at the end of the 2015-2016 school year.

42. Had Bowman not been on a protected leave of absence during a portion of the 2015-2016 school year, her employment with the District would have continued.

43. It is unlawful for an employer to use FMLA protected leave as a negative factor in employment actions. 29 CFR 825.220(c).

44. By pursuing Bowman's termination, Fane violated Bowman's rights under the FMLA. By ultimately terminating Bowman's employment, the District violated her rights under the FMLA.

45. As a result of the foregoing, Bowman has sustained damages. These damages are in the form of lost wages and benefits that she would have received had her employment not been unlawfully terminated.

Wherefore, Bowman respectfully requests that this Court enter judgment in her favor and against the District and enter an award providing for the following:

1. A determination that Bowman's termination decision was made because of the fact that she took a leave of absence that was protected under the FMLA.

2. An order directing the District to compensate her for her lost wages and other benefits resulting from this termination.

3. An award of liquidated damages.

4. An award of pre-judgment interest.

5. An award of attorney fees associated with bringing this claim.

6. Any other order that is just and appropriate.

**Bowman requests a jury trial**

                                      Angela Bowman

                           By: /s/ John A. Baker
                                     Her Attorney

John A. Baker  
Baker, Baker & Krajewski, LLC  
415 South Seventh Street  
Springfield, Illinois 62701  
Telephone:      (217) 522-3445  
Facsimile:       (217) 522-8234  
Email:            jab@bbklegal.com